UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAPHAEL DRIVER,                    )<br>                                                    )<br>            Petitioner,             )<br>                                                    )<br>       v.                                        )<br>                                                    )<br>WARDEN,                                 )<br>                                                    )<br>            Respondent.         ) | No. 1:20-cv-01496-SEB-MPB |

### ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
### AND DIRECTING ENTRY OF FINAL JUDGMENT

Raphael Driver's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case NCF 19-09-0064. Mr. Driver's petition is **denied**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On September 6, 2019, Mr. Driver punched two correctional officers. Dkts. 8-1, 8-2. He does not dispute that he did so. If he did, the dispute would easily be resolved against him by security video that clearly shows him attack one officer and then scuffle with others who attempt to restrain him.[1] Dkt. 10.

On September 9, 2019, Mr. Driver received notice that he was charged with assaulting a staff member in violation of Code 102. Dkt. 8-4. An inmate violates Code 102 by "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner." Dkt. 8-12 at § 102.

Mr. Driver sought to defend his disciplinary charge by showing that he did not strike the officers "knowingly or intentionally." *Id.* As evidence, he requested a copy of his Indiana Department of Correction (IDOC) location history and an e-mail message from a psychologist at his former prison "about not putting him on the yard," or in the general population. Dkt. 8-4. He also asked to present witness testimony from a case manager to the effect that Mr. Driver "shouldn't have been on the yard due to his mental health" and from two other staff members regarding his "mental health issues." *Id.*

The hearing officer attempted to obtain an e-mail from Dr. Marx, the psychologist Mr. Driver identified at his former prison. Dkt. 8-8 at 6. His current psychologist, Dr. Harmon-Nary, responded that there was "not a Dr. Marx" at Mr. Driver's former prison. *Id.*

The hearing officer wrote Case Manager Nemore and asked whether he thought Mr. Driver should have been housed in a general population unit. Dkt. 8-8 at 5. Mr. Nemore responded:

---

[1] *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; *it should have viewed the facts in the light depicted by the videotape.*") (emphasis added).

> my personal opinion is he should've not been on the yard but that is my personal opinion has nothing to do with his mental health, level, etc.

*Id.* (errors in original).

As Mr. Driver requested, the hearing officer obtained a statement from Mrs. Vanest regarding whether she was aware of Mr. Driver's mental health issues:

> At approx. 1320 on [August 26, 2019,] Offender Driver, Raphael (988808) was a participant in the Orientation Program for new arrivals when another offender stated Offender Driver needed to speak to someone. I, Anecia Vanest, Re-Entry Coordinator took him into my office and at that time Offender Driver advised me that he cannot be put in a dorm setting due to PTSD and PPD. A Sargeant was called (Sgt. Freeman) and Offender Driver explained his issue and Sgt. Freeman stated that he would take care of the situation. Sgt. Freeman returned with Officer Terrell and Offender Driver was escorted to RHU.

Dkt. 8-8 at 8 (errors in original).

Finally, Sergeant Freeman provided a written statement in response to the question, "Were you aware of Off. Driver's mental health issues when he arrived at NCCF?" Dkt. 8-8 at 1. Sergeant Freeman responded, "Yes, I was he told me about it once before. I lock him up for it the first time." *Id.* (errors in original).

NCF 19-09-0064 proceeded to a hearing on September 12, 2019. Dkt. 8-6. According to the hearing officer's report, Mr. Driver requested a continuance so he could obtain medical records. *Id.* He stated that he had "been up" for seven days before the incident and argued he did not intentionally or knowingly hit the officers. *Id.*

The hearing officer noted in her report that she consulted with the mental health staff and considered Mr. Driver's statement, reports of the incident, the numerous witness statements provided, pictures showing the officers' injuries, and video showing the incident. *Id.* She determined that medical records would be irrelevant and denied Mr. Driver's request for a continuance. She found Mr. Driver guilty and assessed sanctions, including a loss of 180 days' earned credit time and a demotion in credit-earning class. *Id.*

3

Mr. Driver's administrative appeals were denied. Dkts. 8-10, 8-11.

### III. Analysis

Mr. Driver challenges his disciplinary conviction on three grounds. None entitles him to the relief he seeks.

**A.    Sufficiency of Evidence**

Mr. Driver first argues that the hearing officer denied him due process by failing to consider that his "conduct report was the result of a documented and established mental illness." Dkt. 1 at 3. More specifically, he asserts that his mental illness precludes a finding that his actions were knowing or intentional as required by Code 102. *Id.* This is a challenge to the sufficiency of the evidence supporting the hearing officer's decision.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added). *See also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

The hearing officer's decision enjoys support from considerable evidence. Multiple reports clearly document, and video clearly shows, that Mr. Driver struck staff members. In addition to

that evidence, the hearing officer reviewed evidence concerning Mr. Driver's mental health. None of it beyond Mr. Driver's own statement indicates that he was incapable of acting with knowledge or intent. Meanwhile, Mr. Driver provides no evidence to support his contention that his mental health conditions prevented him from acting knowingly or intentionally.

"Some evidence," including the incident reports, the security video, and even the staff members' statements, supports the hearing officer's decision. Mr. Driver asks the Court to consider the same evidence and reach a different conclusion. This is a request to reweigh the evidence, and the Court may not do so. *Rhoiney*, 723 F. App'x at 348. The hearing officer could have accepted Mr. Driver's explanation, but other evidence allowed the hearing officer to find him guilty. The decision satisfied due process.

**B.     Denial of Evidence**

Mr. Driver next argues that he was denied his due process right to present evidence in his defense. Specifically, he states:

> I was denied opprotunity to present direct evidence of my mental illness through medical records. Also, false statement from Mental Health Staff denied me the report directly from my institutional Mental Health Professional.

Dkt. 1 at 3–4 (errors in original). The Court reads this as an assertion that the hearing officer wrongly denied Mr. Driver's request for a continuance so he could obtain medical records and that he was wrongly denied a statement from Dr. Marx.

Due process entitled Mr. Driver to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff* at 563–67. However, it entitled him only to present "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). As the petitioner, Mr. Driver faces the burden of establishing

5

that the evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Mr. Driver has not carried his burden of establishing that he was denied any material, exculpatory evidence.

The record contained evidence that Mr. Driver was afflicted with mental health conditions. That issue was not in dispute. The question he placed before the hearing officer was whether those conditions prevented him from acting knowingly or intentionally when he punched correctional officers. Mr. Driver has not provided any information suggesting that any mental health treatment records would shed light on that question—much less answer it in his favor.

Similarly, Mr. Driver requested an e-mail from Dr. Marx on the question of whether he should be housed in the general population. Dkt. 8-4. The record included additional evidence supporting Mr. Driver's argument that he should not be housed in the general population. "[P]risoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Regardless, Mr. Driver has not explained how the question of his fitness to live in the general population bears on the question of his ability to act knowingly or intentionally. Lacking such an explanation, the Court does not find that an additional e-mail on the subject would undermine the hearing officer's decision or raise a reasonable probability of a different result. *Jones*, 637 F.3d at 847; *Toliver*, 539 F.3d at 780–81.

6

### C. Reasonableness of Sanctions

Finally, Mr. Driver argues that the hearing officer assessed sanctions that were "punitive and unreasonably harsh" considering his mental health conditions. Dkt. 1 at 4. However, Mr. Driver's sanctions fell within the range of penalties the IDOC has established for "Class A" violations such as battery. *See* dkt. 8-13 at 38. "[A] federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit," unless the sentence violates the Eighth Amendment by being an "extreme" punishment that is "grossly disproportionate" to the crime. *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997). Even if the hearing officer might have had reason to consider lighter sanctions, she did not impose "extreme" or "grossly disproportionate" sanctions by staying within the applicable range. *Id.*

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Driver's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Driver's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.**

The respondent's motion to maintain evidence with ex parte restrictions, dkt. [9], is **granted**. The **clerk is directed**. to maintain the exhibits filed at dkts. [10] and [12] with ex parte restrictions.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/5/2021

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

RAPHAEL DRIVER
Relax Inn Motel
50520 IN - 433
South Bend, IN 46637

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov